UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL LOTZ,

        Plaintiff,

v.

DR. ELDERKIN, et al.,

        Defendants.

PRISONER
3:13-CV-00813 (CSH)

## RULING ON PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION

**I.**     **INTRODUCTION**

Plaintiff Michael Lotz (hereinafter "Plaintiff") is currently incarcerated at the Bridgeport Correctional Center in Bridgeport, Connecticut. He has filed a *pro se* Complaint, [Doc. 1], under 42 U.S.C. § 1983. Plaintiff seeks pain relief associated with, among other things, chronic pancreatitis, severe liver disease - cirrhosis, chronic back aches, nephritic kidney disease, and advanced HIV. On July 1, 2013 and August 1, 2013, Plaintiff filed two Motions for Preliminary Injunction, [Doc. 6] and [Doc. 8]. Both of these motions move the Court to order Defendants to provide Plaintiff with the same medication regimen he states he was taking prior to his incarceration – i.e., a Fentynal 50 mg Duragesic patch and Percocet tablets. *See* [Doc. 6] at 1-2; [Doc. 8] at 1 (explicitly listing these medications). Plaintiff states that "[p]rior to being incarcerated at Bridgeport Correctional Center [he] was on a pain management regimen[] ... for intermittent pain," which was "the only combination of pain medication that proved to help and improve [his] quality of life." [Doc. 6] at 1-2.

Defendants Dr. O'Halloran, Dr. Elderkin and Michael Decenzo (hereinafter collectively,

"Defendants") have opposed Plaintiff's motions for injunctive relief "on the grounds that he is not medically in need of the relief he seeks and thus cannot demonstrate that he will be irreparably harmed in the absence of an injunction." [Doc. 18] at 1.  Defendants additionally aver that there is not "a likelihood of success on the merits of [Plaintiff's] complaint," *id.,* and have attached affidavits to their opposition brief attesting that Plaintiff is, and has been, provided proper and adequate pain management medication for his medical conditions, and that there is no need for the additional medication Plaintiff seeks, specifically the narcotic Fentynal Patch or Percocet tablets.  *Id.* at 1-2.  On October 3, 2013, Plaintiff filed a Reply Memorandum of Law in support of his Motions for Preliminary Injunction.  The Court now rules upon Plaintiff's Motions for Preliminary Injunction, [Doc. 6] and [Doc. 8].

## II.    LEGAL DISCUSSION

"Preliminary injunctive relief is designed to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Therrien v. Huband*, 3:10-CV-00217, 2010 WL 2265615 at *1 (D.Conn. June 2, 2010) (internal quotation marks and citation omitted); *see also, e.g., Anderson v. Lantz*, 3:07-CV-01689, 2008 WL 4210775 at *1 (D.Conn. Sept. 11, 2008).  District courts may generally "grant preliminary injunctions when the party seeking the injunction demonstrates (1) that he or she will suffer irreparable harm absent injunctive relief, and (2) either (1) that he or she is likely to succeed on the merits, or (b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *No Spray Coalition, Inc. v. City of New York,* 252 F.3d 148, 150 (2d Cir. 2001) (per

curiam) (internal quotation marks omitted)); *see also, e.g., Lynch v. City of New York*, 589 F.3d 94, 98 (2d Cir. 2009).

It is, however, "frequently ... observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted) (emphasis in original). While "a showing that irreparable injury will be suffered before a decision on the merits may be reached is insufficient by itself to require the granting of a preliminary injunction, it is nevertheless the most significant condition which must be demonstrated." *Daniels v. Murphy*, 3:11-CV-00286, 2012 WL 5463072 at *3 (D.Conn. Nov. 8, 2012) (citing *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)).

In this case, Plaintiff seeks a mandatory injunction – which is to say, an injunction that alters the status quo by commanding the defendant to perform a positive act. "A party moving for a mandatory injunction that alters the status quo by commanding a positive act must meet a higher standard, however. That is, in addition to demonstrating irreparable harm, [t]he moving party must make a clear or substantial showing of a likelihood of success on the merits." *D.D. ex rel V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (internal quotation marks and citations omitted).

"Although a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony is not required in all cases." *Daniels v. Murphy*, 2012 WL 5463072 at *3 (citing *Kern v. Clark*, 331 F.3d 9, 12 (2d Cir. 2003)). Indeed, "[w]here, as here, the record before the district court permits it to conclude that there is no factual dispute

3

which must be resolved by an evidentiary hearing, a preliminary injunction may be granted or denied without hearing oral testimony." *Id.* (internal quotation marks and citation omitted). Upon review of the record in the case at bar, the Court concludes that oral testimony and argument are not necessary in its adjudication of Plaintiff's Motions for Preliminary Injunction.

Plaintiff alleges that prior treatment demonstrates that this narcotic regimen is the only which one which is effective.  *See* [Doc. 8] at 1 ("These [medications] have [been] proven to be the only medications that were deemed to be effective by outside facilities prior to admission, since all other remedies were thoroughly exhausted.") Defendants contend in their opposition brief and their Affidavits, however, that Plaintiff "is, and has been provided with the proper pain management medication for his medical conditions," and that "[t]here is simply no medical need for the narcotic Fentynal Patch or Percocet tablets [Plaintiff] claims to need," as Plaintiff's "medical conditions do not warrant" them. [Doc. 18] at 1-3.

Defendants further state that "[i]t is the professional opinion of Drs. Elderkin and O'Halloran, who are familiar with [Plaintiff's] medical records and conditions, that [Plaintiff] does not suffer true pain from Pancreatitis, or his other medical conditions, but is seeking the narcotics to feed an addiction." *Id.* at 3.  In support of these averments, both Defendants state that Plaintiff "just had an MRI of his abdomen on August 13, 2013, which showed the pancreas to be entirely normal," as well as blood work which rendered the same showing, and that there "is no current evidence that [Plaintiff's] pancreas is diseased in any way...." *Id.* Defendants further note that Plaintiff gained 26 pounds between his incarceration on August 12, 2012 and August 7, 2013.  *See id.*  They aver that such a weight gain "is unlikely for someone with on-going pain from chronic pancreatitis, as food consumption usually worsens the pain and leads to nausea and

vomiting," and accordingly chronic pancreatitis "usually results in a loss of appetite and weight loss, not gain." *Id.* at 3-4.  When Plaintiff was placed on a liquid diet, which Defendants state us the common medical approach for chronic pancreatitis flare ups, "he complained ... to be allowed to eat regular food" and "asked for an increase in his narcotic to then allow him to eat as much as he wanted and ignore the medical treatment aspect of his diet." *Id.* at 4.  "Dr. O'Halloran has never seen this behavior in a person who has objective evidence of pancreatitis in all of his years working in corrections and in private practice." *Id.*

      Defendants further state that Plaintiff's "complaint about a need for narcotic pain medications for his other medical conditions; severe liver disease-cirrhosis, chronic back aches[,] ... and full blown AIDS, is not medically founded." *Id.* at 5.  This is because, they state, "just having AIDS is ... not a reason for pain," nor is "having severe liver disease." *Id.*  In addition "though Thoracic fractures are very painful, they heal and would not be expected to cause long term pain." *Id*.  Rather, Defendants state that they believe that Plaintiff's effort to obtain narcotics is driven by addiction rather than pain.  In support of this belief, Defendants cite the fact that "despite receiving" the "narcotic medications in the Fetynal Patch, Percocet[,] and Oxycodone from the medical clinic due to his claimed history of Pancreatitis," Plaintiff was shown through "a random urine test [to] also [be] using cocaine and marijuana," thus demonstrating "the need to use illicit drugs even when he was on" the medications he now seeks. *Id.* at 4.  Further, the medication Plaintiff is currently being prescribed for his complains of pain, is, Defendants state, "considered in the medical community to be the best medication available as proven in studies for pancreatic derived pain ... because [it] delivers the pain relieving power of narcotics without the high." *Id.*  Defendants thus cite Plaintiff's "claim that [this medication]

5

does nothing for his pain [as] further evidence ... of [P]laintiff's addiction to narcotics," particularly as "it is medically impossible for [it] to do nothing for [Plaintiff's] pain [if] the narcotics do." *Id.* at 4-5.

Defendants thus conclude that Plaintiff simply "isn't getting the high that the narcotics provide and that is why he is not satisfied with his current course of treatment," *id.* at 5, and that there is simply "no medical need to provide [Plaintiff] with any type of care or pain management above or beyond that which he has been, and is being provided, by the medical staff at UCHC and the Department of Correction during his current incarceration." *Id.* at 6. On the contrary, they state, "[h]e is being medically managed in the best manner for his needs," and "[t]herefore, as the evidence demonstrates, there is no threat of irreparable harm to [Plaintiff], nor likelihood of success on the merits" in Plaintiff's Motions for Preliminary Injunction. *Id.*

In his Reply Memorandum in support of his Motions for Preliminary Injunction, Plaintiff states that he "continues to experience severe chronic pain" and that due to this he has a "limited ability to carry on with normal daily activity or exercise. [Doc. 22] at 2. He states that he "also continues to be in immediate danger of internal hemorrhaging" due to other medical factors. *Id.* Plaintiff avers as well that he is threatened with irreparable harm, that the balance of hardships favors his receiving the mediation he seeks, that he is likely to succeed on the merits in this action, and that the relief he seeks will serve the public interest. *Id.* at 2-4. He includes with this memorandum an Affidavit in which he states that "Defendants have included false statements in [his] medical records indicating that [he] was given medications for pain and conditions," that "it took a total of nine (9) months to be seen by an eye doctor for black floating spots in vision," and that he is currently only allowed "Tylenol #3 1x a day every other month for a week to ten days at

6

a time which is not sufficient and detrimental for a patient with known documented liver cirrhosis." [Doc. 22-1] at 2-3.  Plaintiff further states that Defendants "refused to follow recommendations from surgeons at [the] UConn medical facility to treat pain issues[] with continued pain medication appropriate for severe pain," [Doc. 22] at 4; however while he claims that the words written in asterisks in an attached exhibit support this contention, after careful review the Court does not find direct evidence of such, since these words and their intended implication and even meaning are ambiguous at best and certainly do not meet the "clear showing" required by law for Plaintiff to prevail in his Motions for Preliminary Injunction.  *See* [Doc. 22-1] at 10; *Mazurek v. Armstrong*, 520 U.S. at 972.[1]

While the Court is sympathetic to Plaintiff's claims and does not doubt the sincerity with which he makes them, it is must make its rulings based upon the evidence with which it is provided.  This evidence, which the Court has thoroughly examined, does not clearly support Plaintiff's allegation that he suffers from severe pain in such a way as to require the specific narcotic medication regimen he seeks in his Motions for Preliminary Injunction.  As stated above, this burden of persuasion is Plaintiff's, and the evidence provided does not meet it.  *See Id.*  Further, in light of the two medical affidavits submitted by Defendants, which his own submitted evidence does not refute, it does not appear likely that Plaintiff is likely to prevail on any claim for this particular regimen of pain medication.  Consequently under the standards by which it must evaluate and adjudicate Plaintiff's Motions for Preliminary Injunction, the Court must deny them.

---

[1] The Court further notes that other notations contained within this medical exhibit support contentions made by Defendants.  *See* [Doc. 22-1] at 10.

### III.     CONCLUSION

In accordance with the above, the Court DENIES Plaintiff's Motions for Preliminary Injunction, [Doc. 6] and [Doc. 8].

The foregoing is SO ORDERED.


Dated: New Haven, Connecticut
       November 7, 2013


                                                */s/Charles S. Haight, Jr.*
                                                Charles S. Haight, Jr.
                                                Senior United States District Judge